This is County of Santa Clara v. Astra USA, Inc. This is County of Santa Clara v. Astra USA, Inc. May it please the Court, my name is Sandy Svetkov of the Coghlan-Stoya Firm here in San Francisco. I represent the appellants, the County of Santa Clara and its Section 340B medical facilities, which are plaintiffs in this case. Our submission is pretty straightforward. We're only raising one claim on appeal. We seek reversal of the district court's dismissal of our contract claim. And we allege that the drug makers overcharged the county's medical facilities millions of dollars for drugs they agreed to sell at a discount. The contract with the government is attached to the complaint. It's in the record. We've read it. And the question is, under Kremen or under what's the other one?  Klamath. Are the — what you need to establish different, or is there a higher standard imposed by Kremen which has to require you to parse the contract and find out whether there is an intent to not only benefit Santa Clara and people like — entities like it, but also to create a right to sue in lieu of or in the shoes of the Secretary? Your Honor, there are two kinds of benefits for third parties, intended direct benefits and incidental indirect benefits. In Kremen, the registrant of the domain name was an indirect incidental beneficiary. In that case, Mr. Kremen needed to have the additional piece of evidence about the intent to enforce. In our case, because the contract reads, manufacturer agrees to charge covered entities a discounted price, the covered entity is the intended direct beneficiary. And inherent in that status, Judge Fischer, is the right to enforce. Where does that come from? It comes from two discrete places. It comes from Restatement 304, which reads, A promise in a contract creates a duty in the promisor to any intended beneficiary to perform the promise, and the intended beneficiary may enforce the duty. And I'm happy to report that that restatement provision is also picked up by the Klamath decision. On page 1211, in footnote 2, the Court, this Court said, A promisor owes a duty of performance to any intended beneficiary of the promise. And, quote, the intended beneficiary may enforce the duty. Restatement section 304. Your Honor, I was here early. One of the benefits of being here early in the morning is to hear the Court's ways of thinking. You use the word conflate. If you follow Judge Alsup's decision here, you conflate the concepts of intended and incidental beneficiary. This Court, the Federal Circuit, and the Restatement treats those differently. It is true that we have to demonstrate clearly within the four corners of the contract the intent to benefit directly. But in this contract, as I just read to you on excerpt of Record 91, the intent could not be clearer. Manufacturer agrees to charge covered entities, that's us, a discount price. Can we stop right there for a second? Yes, Judge Brunetti. It is a 12b6 action. Yes. And I read your complaint very carefully. The contract claim, including the third-party beneficiary, are just part of it. Now, underneath that, there's something that's sort of confusing me. First of all, the complaint makes direct reference that this all stems from the Medicaid provisions. Correct. Because if we didn't have Medicaid, we wouldn't worry about this reimbursement stuff. Secondly, the complaint also states that because of the Inspector General reports, it's become aware to your clients that you've been overcharged. However, you can't determine that because, according to the statute and the contract, it's confidential. So there's no way that you're going to know whether you're overcharged, except Inspector General said you were. And, therefore, you've been hurt, and, therefore, as third-party beneficiary of being this identified party, that you should sue. Now, can we truly separate Medicaid and all those ramifications and just go to the contract? This is just an old contract. Don't care what it's about. Don't care if it's Medicaid, whatever. It just said there was a product, and the product is intended to have a certain price to be to me, and that's all we have to look at. Don't worry about Medicaid. Don't worry about anything else. But, Your Honor. The reason I ask that is here's where I get hung up. How would you say that, and this is not in the record because it's 12b-6, how would we know and how would you know that you were not charged the right price until you get to discovery? So you're going upon what we have. So we accept that for that. But this all wouldn't exist except for the fact that I think it is in the record that the government funds all of this. In other words, the only place where this money comes from is from the government, and apparently they entered into this contract so that they would get their value. You're the instrumentality to deliver the drugs, but the government doesn't buy the drugs and dispense them. They let you dispense them, but they reimbursed you somehow. That's not in the record either. Well, that's not correct, Judge Brunetti. That's where I want to find out. The ‑‑ when drug manufacturers participate in the Medicaid program and agree to sell drugs to my clients at a reduced price, they get into this program. And as part of that program, 15 percent of their ‑‑ they get reimbursed a percentage of that discount so that they give us a discount, but they are reimbursed by Medicaid. This is a very lucrative program for the drug makers. Follow the money for me, because that's where I'm lost. Who gets the discount and who gets reimbursed? The county medical facilities get the discount. That's what the manufacturers agree to do. They agree to sell their drugs to us at a discount. But you pay net, the net price. We pay the price that they ‑‑ Okay. Now, what do you get reimbursed? We don't get any reimbursement. They get the reimbursement. The drug makers get reimbursed through Medicaid. Okay. That's the ‑‑ that's the ‑‑ they get into the program. They get to sell billions of dollars of drugs to the facilities that I represent, and they get a reimbursement from Medicaid. You don't get any money from the government for the drugs, per se? My clients don't get any money. We pay a discounted price, or we would have paid a discounted price if they had sold it to us at a discount. Following the money, you may get government funds for supporting the institution. It says government funded. Well, but that's separate from what ‑‑ Exactly. That's what I'm trying to get to. So that's separate. So as far as the drug transaction is, you buy, you're supposed to get a certain price, they sell, and because they sell at a discount, the government pays the drug company. That's my understanding of how it works. So where does ‑‑ why are you paying and the government's paying? You said that you have bought. We buy the drugs. You buy the drugs. Do you buy them with money? We buy them with our money. Okay. So now they have received your money. Correct. Okay. Now, why do they need any reimbursement from Medicare? My understanding of how this works is to encourage their participation in the Medicaid program and to sell us at a discount, the government agrees to reimburse a part of that. That's the carrot. So they sell at a discount and then they get money from the government to bring it back up to the ‑‑ Correct. ‑‑what they otherwise would sell others. Well, whether it ‑‑ I don't know that it brings it back up to a level. It's on top of whatever your client has paid. That's my understanding. That sounds bizarre. Maybe it's the way it works. I thought that the whole point of the program was that the government saw that this money, lots of money are being spent on Medicaid, that they wanted to try to reduce the cost, and so they forced, if you want to be part of a program to supply drugs to folks that use them, you've got to reduce and we'll make a contract with you so you'll have nice clients all lined up to sell it. I didn't think there was any reimbursement. I didn't see that in the complaint anywhere, so I'm a little bit lost on that. I think if you look at page 65 of the complaint, of the excerpt of record, in paragraph ‑‑ Wait, wait. Of the excerpt of record? Look at, yes, in the third amended complaint at page 65 of the excerpt of record. Which paragraph? Paragraph 35. It says, Section 340B requires defendants, that would be the drug companies, to participate in the 340B program as a condition of having their drug charges reimbursed. Slow down. Slow down. Okay. Page 65 of the excerpt of record, right? Correct. Okay. Now ‑‑ Paragraph 35 of the third amended complaint. Hold on. Okay. Okay. Okay. This is of the third amended complaint. Yes. This is the proposed third amended complaint that we brought before the district court in our motion for leaf to amend. That paragraph doesn't say, though, who gets the reimbursement. Unless that sentence means that the defendants participate to get reimbursement. And that's where my mind blows apart, because I thought that the whole purpose of this was for the government to save money. Not that that's not what they do. But, I mean, I understand what you're saying. And while this is not as clear as it could be, at this stage of the game, we get the inference. No, that's why I said, I went back to the complaint and I said, I want to go through the complaint and figure out what's going on. I don't find that ‑‑ I got the impression before reading the complaint thoroughly that you received the reimbursement from the government. What we get, what we would like to get is the discount price agreed upon in the contract. You're just bargaining for the price. Correct. And that's it. That's it. The 15 percent is not our ‑‑ my understanding is that that's the carrot that brings them into the program. This is not in the complaint, probably. What happens is, though, that the government pays your entity on the side for supporting the Medicaid program. Pays my entity? Yeah. It's federally funded somehow. I mean, it's loosely described as the fact that you're federally ‑‑ you obtain federal funds. And it's all ‑‑ that all of this is under the umbrella of a Medicaid program. Yes. And ‑‑ So, in effect, you are getting money back underneath to pay this bill. But, Your Honor, that's not part of this case or this claim. I'm trying to separate. Right. It's not part of ‑‑ That's why I asked. If we can keep this to the contract, it really doesn't matter about all this Medicaid stuff. It's what you allege in your complaint that gets you either beyond or not beyond 646. Well, yes and no, Judge Brunetti. The complaint incorporates the contract. It also incorporates the statute which requires the contract. And the ‑‑ and the contract is consistent with the statute. Section 340B says that the secretary shall contract with the manufacturers to provide discount drugs to covered entities. There's a parallel here. The statute says we are intended beneficiaries. The contract says it. There's an argument that ‑‑ that the statute doesn't provide for the ‑‑ for the remedy that we are here seeking, a breach of contract claim. The statute doesn't provide any remedy. That's how it ‑‑ this case is distinct from Graczkowski and D'Amato and ‑‑ and Kaliotos in the Supreme Court. In those cases, the statute provided an administrative remedy. Well, let me ask ‑‑ let me ‑‑ let's go back to ‑‑ let's go to the contract. Yes. Okay. First of all, are there other ‑‑ is there another contract you have with the manufacturers? Or is this the only contract that you have, that Santa Clara has with these drug manufacturers? The exemplar contract. I know. Is the ‑‑ Or is this contract? It is this contract. Are there other contracts that their failure to pay, I mean to charge you the correct price, would be affected by whatever happens on their performance under this contract? Well, my understanding is that this is the contract that's used for all of these kinds of drugs. That's not my question. But not ‑‑ but I don't know about any other kinds of contracts. Okay. Let me ‑‑ here's ‑‑ go to the contract, ER 94, and it talks about nonrenewal and termination. ER 94. Okay. Romans 6C. The secretary may terminate the agreement for a violation of the agreement. Okay. You go down, and it says, disputes arising under a contract between a manufacturer and a covered entity, which would be your client, should be resolved according to  Actions taken by the parties in that contract are not subject to any such disputes, are not grounds for termination of the agreement, that is, the model agreement, with the secretary, except to the extent that there is a violation of the provisions of the agreement. What does that mean? Well, the first part means that disputes are to be resolved pursuant to the contract. Well, yes. Okay. And the contract ‑‑ Of that contract. That's not this contract. That's that contract. It says, disputes under a contract between a manufacturer and a covered entity. That's not referring to this contract. This contract is called the agreement, so should be resolved according to the terms of that contract. Well, I guess my ‑‑ If it's violating the provisions of this agreement, then it may be grounds for the secretary to terminate the contract. Your Honor, I think that this is the ‑‑ an exemplar contract. Well, we're trying to understand whether you're an intended beneficiary with rights to sue, and at least this provision seems to contemplate that there's a set of ‑‑ potential contract out there between your client and the manufacturer, which may provide grounds for terminating this contract. But the contract that's being referred to will be an actual contract with these provisions in it. That's why I'm asking. Is there another contract? I'm not aware of any other contract. All right. Second question. You're seeking to come in as a third-party beneficiary, as I understand it. Okay. Where's the secretary in all of this? Why is the secretary not a party to this or involved in this litigation? The secretary has never sought to intervene in this litigation. I understand it's never sought, but you said there's no remedy provided in this agreement. Actually, there is a remedy which deals with what the manufacturer can do vis‑a‑vis your client. And then there's Proviso 4C, which says if the secretary believes that the manufacturer is not complied, then it triggers this alternative dispute resolution. Why would your client not have gone to the secretary and said, we want you to invoke this because they're cheating us? And does the secretary not then have some kind of interest in this case as to whether you, your client, can go skip over that? I realize it's discretionary whether to invoke it, but it's the secretary's discretion. So, again, why isn't the secretary involved in this? Well, the complaint and the attachments to it and other documents in the record reveal that the secretary's oversight of this program is deficient in a variety of ways which are cataloged in the complaint. One of those ways is it has never invoked the dispute resolution procedure. Has anybody asked him to? We don't know that. Well, why wouldn't you? I'm sorry, Your Honor. I'm guilty of interrupting. No, well, no. I'm interrupting you because I'm trying to understand if you're saying there's no remedy here, but there is a remedy. So you're going to this contract. You're telling me it's the only contract. So my question is, why, if you're seeking to stand in the secretary's shoes, why not yourself say we can invoke ADR or go to the secretary and say, I don't know whether there's an exhaustion here. I'm just curious as to what is the implication of our construing this agreement, which is an agreement between the secretary and these manufacturers. There are multiple answers. First, the dispute resolution procedure is entirely elective by the terms of the public. I understand that. And it also says in the contract that nothing in the dispute resolution procedure shall preclude the parties from any other remedies that they have. The parties being the secretary and the manufacturers. And third-party intended beneficiaries, Judge Fischer. We stand in the shoes of the secretary for that. You still aren't answering my question as to why didn't you standing in the shoes find out whether the secretary standing in his or her shoes, I don't know who the secretary is these days, would or wouldn't pursue this ADR. Because the existing track record of reports from the Office of the Inspector General and from the Senate Oversight Committee is that that was an exercise in futility, and we pled that in the complaint. So let me ask, because you're running low on time, so should this Court consider inviting the views of the United States on this? Your Honor, I've done a lot of cases under the McCarran-Ferguson Act where the States have control and the insurance companies come before the courts and say this is for the States to regulate. And in those cases, I point out, and the Supreme Court pointed out in Humana that it's very significant that the States are not here seeking to have us exhaust. They're not here seeking primary jurisdiction. Should we invite the views of the secretary as to the construction of this contract? Your Honor, no. The views of the secretary have proven lame in five straight inspector general's reports and the Senate report. It would be a waste of this Court's time. What we are doing is acting as a private attorney general to do the job that the secretary has failed to do since the inception of the statute. And the inspector general's reports in this record show that, including the one that the defendants submitted, which showed that they withdrew the amount that we were overcharged, but left in all of the charges of failed oversight by the government. So I take it your answer is no. I said that before and I say it again. The answer is no. Your time is up, but I want to reinforce my understanding of what you just said. Being we're in 12b-6, we are to be bound by your pleadings. And I don't know what would happen after it goes on if it does. But we're bound by your pleadings where you used whatever you found in the inspector general's reports and said this is what I found, this is why I'm doing it. So we're bound by that. That's fine, Your Honor. That's why we're here. And the judge, as far as I know, did not open this up. He just the judge had what we have, and that's the contract period and your complaint. The complaint, the contract, the inspector general's reports, Senator Grassley's letter, yes. Yes. Because those were attached to the complaint. Yes. Or submitted by our opponents for judicial notice, which would make them attached to the complaint. Yes. Yes. Thank you. Thank you. So you didn't need a rest. No. You got lots of energy. No. Since I've turned 65, I seem to need less and less rest. I hope you're on medication. May it please the Court. My name is Robert Litt. I represent AstraZeneca Pharmaceuticals and two affiliated companies, and I'm arguing on behalf of all its defendants in this matter. I would like to take a moment at the outset just to clarify some of the factual issues that were raised in the questions asked by Judge Brunetti and Judge Fisher. Judge Brunetti, your understanding of the way the program operates was correct. These particular pharmaceutical purchases are separate from the Medicaid program and are not reimbursed under the Medicaid program. The way it works is that the plaintiffs are all entities that receive Federal funds to support their operations, and that's where the Federal nexus comes. This particular program is not part of the Medicaid Act, but part of the Public Health Service Act. The defendants do not get any additional reimbursements for these drugs. The United States Congress provided essentially that if a pharmaceutical company wants to have its drugs reimbursed anywhere in the Medicaid program, if it my client makes Nexium, if it wants to have Medicaid program pay for any Medicaid patient to purchase Nexium, it has to agree to this, to sell Nexium and all of its products to 340B entities at discounted prices. Let's stop right there, because that kind of clears up something. If I am on Medicaid, I go to a facility, and that facility gets Federal funds to operate the Medicaid program, and they prescribe a drug, your drug, they buy it through you through this contract at the agreed price. That's the way it works. In the meantime, the government is providing money to support that Medicaid program at that facility. The government is providing money to support the Medicaid program, but under Medicaid ordinarily if you as a Medicaid patient go to a drug store to buy a drug, the Medicaid program pays the druggist for that drug. There are regulations actually that the Department of Health and Human Services has issued to make sure that the drugs that are purchased under the 340B program by the clinics are not separately reimbursed by the Medicaid program. They are separate. And there is no additional payments to the defendants for these as well. All that we get is the ceiling price. That's key, because let's go back to 12B-6. Can I just clarify that, though? When you say the only money they get, are they getting it in this case from Santa Clara for what Santa Clara buys? Yes, Santa Clara is paying. Santa Clara is out of pocket that money. Correct. Santa Clara pays for it. Thank you. That's right. And that's key, because now we've cleared that up because we're on 12B-6, so we can go back to 12B-6 and not worry about some other. Because they do talk about the Medicare program and the statute in the complaint. So in this case, Santa Clara says, wait a minute. I don't know what this agreement provides for because in the statute and the contract, it's confidential what the price should be. All I know is I've got this government report from the inspector general that says, man, this program is out of control, it's out of whack, and there's millions of dollars and people are being overpaid. And I am the direct impact of this because I'm paying for this and I've lost money. That's what 12B-6 says. I want you to give me the right price. Now, what's wrong with that? Well, we're not claiming that the complaint is deficient under Rule 8, but we are claiming that they are not intended beneficiaries entitled to sue under the contract. Exactly. Exactly. You're saying they're not intended beneficiaries. Well, you just blew the United States out because you said the United States isn't paying for these drugs directly. So who's got any interest in the fact that these drugs are paid for or that the drugs are priced the right price? Obviously, it's these entities because they're paying it out of their pocket. The United States has an interest as well, Your Honor. The – first of all, the statute specifically provides that the purpose – the legislative history of the statute says that the purpose is to stretch the Federal resources that are being provided to these entities to support them. Wait a minute. Where is this specified? This is in the legislative history. It's cited in our brief. That's what I asked in the beginning. If the government's putting in money – I'm trying to follow the money here. If the government's putting the money in to support the program, then indirectly, it supports these people who are doing it. But nobody wants to – but that's not in the complaint. It's a matter of record, I think, in the legislative history and in the statute, that all of the entities that are eligible to participate in the 340B program receive Federal funds. It's not a direct track-through for the particular purchase of these drugs. That's what I was getting at earlier when I asked, do we look at the contract in isolation, or do we have to look broader to the Medicaid program as alleged in the 12B6, or as we can recognize to show that the government has an interest? Because if you look at the contract, it's very vague where the government interest is, if at all, other than the fact that they were contracting to give these folks a good price. I should also say, Your Honor, that it's a matter of record in this case, and I believe it's at page 211 of the record extracts, that the United States, in suing pharmaceutical companies, has recovered money to be paid to 340B entities. And so it is, in fact, the case that the United States has demonstrated an ability to enforce pricing rules for the benefit of 340B. Is that the settlements that are talked about in the complaint? Yes. Those are instigated by the government? Yes. Okay. In a third-party beneficiary lawsuit, does that mean that the direct party to the contract has no right to sue? No. No, absolutely not. The government has a right to sue, and a third-party beneficiary could have a right to sue. If there were third-party beneficiaries in this case, yes, Your Honor. They would. And, in fact, I think the restatement of contracts in Section 313, which is the provision that specifically relates to government contracts, says that you do stand in the you you have there has to be a right in the United States to sue as well. I just have a problem understanding why, if a contract is designed to secure a particular price for a particular group, why that group wouldn't be a third-party beneficiary? Your Honor, the more I prepared for this case, the more I came to the personal conclusion that thinking about this in terms of third-party, of traditional contract third-party beneficiary law is not the right way to think about this case. And I would If you did, you'd lose the case. No, no, Your Honor. No. This is an argument that we made in our brief, which is to say that this is a peculiar kind of contract. This is not the typical case where there's a government program and you let a contract to construct an office building or something like this. This is a case where the contract and the statute are the same thing. And I would ask Your Honors to consider how would an action by these plaintiffs suing on the statute look any different from this action in which they're claiming to sue under the contract? It wouldn't. This is a contract where Congress, in the exercise of its spending power, has essentially said if you drug companies want to participate in this Federal program, if you want to have the benefit of Federal funds for this program, we're going to impose certain conditions on you. So I understand where you're going with this. If we were to conclude that there was a private right of action under the statute, that would be functionally equivalent flipping it to saying that there's a third-party beneficiary under this agreement? That's correct. And conversely, Your Honor, since we think it's quite clear that under the existing standards there is no private right of action under this, because I think the existing jurisprudence of the Supreme Court in cases like the San Carlos Apache case says that before the courts can imply a private right of action, it has to be clear that Congress intends not only that there be a private right, but that there be a private remedy. And there is no indication at all in this statute that Congress intended a private remedy for violation of this statute. So you've said that this is a special circumstance. Is there any case that comes anywhere close to this, or is this such a unique setup that we have to make it up on our own? No. There are cases that are close to this, Your Honor. The general principle that we're talking about, about the interpretation of a contract such as this, is discussed in this Court's decision in Rendleman v. Bowen, which we cite, which is a case involving a doctor who was trying to get out of his obligation under the public health service contract. And the Court and this Court said basically when you have a contract which is no more than the embodiment of public policy as set forth by contract, you don't interpret the contract, you interpret the statute. And this has been this principle. I don't have these cases memorized, the facts. What were the circumstances? This was a doctor who was who had received a scholarship and owed a public service obligation that he was trying to get out of. And he was claiming that the government had breached its contract with him by which he was provided the funds for his scholarship. And the Court said basically you don't look at the – it's not a third-party beneficiary case. It's a general contract principles case. But it says you don't look at the contract, you look at the statute. Well, I know. But, see, I'm still trying to figure out, as Judge Reinhardt suggested, you know, if you apply third-party beneficiary jurisprudence, this is pretty focused on a very identifiable group. And if you look at Klamath and all of – and the water rights cases, you can see where, you know, there's a pretty broad public that's benefited from the contract. Whereas here, you have a defined entity – a group of entity. They're even called the, you know, covered entities. And you have this proviso. Maybe you could opine as to what you think that part that I mentioned in the termination provision means. Because it seems to contemplate within the four corners of the contract that you have a defined group. It contemplates that there may be a contract outside the agreement with these entities if they have any rights under those separate contracts. And if those rights somehow affect the substance of this agreement, would provide term – reasons to terminate the agreement. I don't know what to make of that. But to the extent we're looking at third-party beneficiary, we have to sort of deal in the first instance with the words and intent of the parties to the contract. There are several different questions in there. And if I can sort of go through them in reverse order, Your Honor, it's not a matter of record in this case whether there are separate contracts between the pharmaceutical companies and the plaintiffs. As a matter of fact, I know it to be true that there are not – not always, but the pharmaceutical companies will sometimes enter into separate contracts to provide drugs at particular prices, usually, in this case, lower than the 340B price to the 340B entities. Now, I assume there were, because otherwise the agreement wouldn't refer to that possibility. Okay. So. Correct. And the relation – and that, I think, is another indication that this particular contract, the pharmaceutical pricing agreement, is one which the Secretary has the power to enforce, not the 340B entities. Why do you say not? Because the – Where's the exclusion? Well, the exclusion – first of all, bear in mind that particularly with respect to government contracts, creation of third-party beneficiary rights is an extraordinary and unusual step. The burden is to show that the third-party rights were intended to be created. Essentially, all you have to – and let me say that I do believe that the Kremen v. Cohen correctly states the law. It's consistent with the Klamath decision, which talked about the creation of enforceable rights. There's a difference between just a contract that is intended to benefit a group and a contract that's intended to create rights in that group. And in order for the third party to be able to sue, there has to – there has to have been rights created. Yeah. Well, it sounds like they're – they have a right to get the discounted price. Your Honor – And there's nobody else that's going to be interested in this. There's – you know, no other downstream users of any of this. It's basically one group that's been guaranteed, basically, a discounted price. In the – in cases like the Klamath case, this Court has made very clear that the fact that the contract operates to the benefit of a particular group is not sufficient. Yeah, but that's just where they say that these are incidental beneficiaries and distinguish them from the intended beneficiaries who are identified. A contract can benefit lots of people. And the difference, as I understand it, is that when you have the contract that shows that these are the particular beneficiaries and we identify them in the contract, then you're – you're intending that those people be treated as third-party beneficiaries who have the right to sue. I hesitate to disagree with Your Honor, but I think – I don't hesitate. But I believe that this Court's jurisprudence makes clear, and I – this is close to a direct quote from, I believe, the Orff case, that the fact that the – that the beneficiaries are identified in the contract is not sufficient to make them third-party beneficiaries. But also, conversely, if they're not identified, it's a factor. That's – that's correct. It ultimately comes back to what is the contract all about. And I – I don't know if there's any case that has found a – a single identified group of beneficiaries which distinguishes it from Klamath and the – and the – and its progeny or – and Kremen. Your Honor. Here you have a unified, identified group called the controlled entities. That's – that's selective. Why doesn't that then step over? If this doesn't make it, what the heck would? Well, Your Honor, I would – I would actually go back into history to the – the old Supreme Court-German alliance case. That was a case – I was hoping you'd raise that. That was a case, Your Honor will no doubt remember, where the – I wasn't born then. Where a – where a water company contracted with the – with the municipality to provide water to the community. And the Supreme Court held that homeowners whose homes were destroyed by fire could not sue the water company because it had not put the hydrants in the right locations pursuant to the contract. Now, there's no functional difference between either the size of the group benefited or the – or the definiteness. What did the contract say? Did it talk about homeowners and here's what you have to do for these homeowners? Or was that just a general public at large? The – it was the public at large within a defined area. And it – I don't think it matters whether you – Well, that sounds like an incidental benefit. Your Honor, I – I have – I believe that the terms incidental and direct are a little bit like proximate cause. They define the result. They don't identify the test that you have to apply. Let me take off on that. Let me take a little different slant on the first question I asked. I – in the beginning, I was wondering whether we were confined to analyzing the contract in its four corners or whether we analyze the contract in a general scope of Medicare. And you answered part of this in a way. You want us to revert back to the statute because the statute is the one that authorizes the contract. The question was asked if there was a right of action given to these participating entities in the statute, then they'd have a right of action here. It seems to me what we've been talking about is we can find all kinds of incidental and direct beneficiaries, but that's black-letter law. What's not black-letter law is you've got to drop it in the matrix of where you are. Are we in the matrix of politics and legislation? And if we are, the complaint talks extensively about the Section 340B program. Well, the Section 340B program is not necessarily defined in that way in the complaint  If you look deeper, though, to the statute and to legislative history, if we can, this is where I got hung up in the beginning. The incidental or direct beneficiaries become a minor point at that point because if the government is trying to put money into the Medicaid system, if they're trying to save money in the Medicaid system, it really doesn't matter who the beneficiaries are, they're only the operatives to make the thing work. Is that the kind of matrix you're talking about? Yes, Your Honor. That's exactly our position. And I think that that's something that can properly be considered on a 12b-6, because you're dealing with statutes that exist out there that the Court can consider. I will have to do that, because I think the statute found the hole, and that is the statute. I think that the plaintiff found the hole and said, no, this is a contract action because that's what he alleged. He alleged several cause of action, one being a contract action. And he found that contract action because it gave him the direct method to get in, in a third-party beneficiary, and probably so. But if that contract really exists in a different matrix, if it came from that extension of the Medicaid political legislative process, and if that comes in, then I'll have to look at that. Your Honor, I would refer, Your Honor, in that regard to the discussion in our brief of cases, such as the Gruchowski case from the Second Circuit and the various cases involving the NASD, in which courts have said that when you have a contract like this that is simply no more than the effectuation of a statutory mandate, and when it is clear that Congress has not provided a private right of action, as we think it is in this case, then courts should not allow a third-party beneficiary action under common law because it's Congress that prescribes the remedies for violation of Federal statutes. Do we have to ask the question, then, which is political and legislature in nature, why would Congress do this? Why would Congress get involved between somebody that pays their own bills and buys drugs, why would they get involved? And why would they enter into a contract to force these two people to go into these convoluted situations, including the voluntary dispute resolution? Why would Congress do that? Do we have to go into that? Well, I don't know whether you have to or not, but it's clear that the reason you're back to direct an incidental beneficiary, you're right back to the black-letter law. It's clear from the record that the reason Congress did it is because these entities were receiving Federal funds and they wanted those Federal funds to be stretched as far as possible. And so the purpose of this whole legislation was to preserve and make the best, the most efficient use of Federal resources. What if that was the case, but what if the contract missed the mark and, in fact, gave them a third party beneficiary, right, because it wasn't structured properly? Well, Your Honor, if there was indirect. Because it's indirect. We're not tapping into those funds that are given to these entities to run their Medicaid facility program. This is directed to a specific thing. Drug manufacturer sells directly to the entity. So maybe the contract was misstructured under that process. I would say, Your Honor, that I don't think the contract is a model of clarity. And I think it's certainly that one of the recommendations I'd make to the Department of Health and Human Services is they seek clarity in some of these issues. Well, you'd have to say that the policy and the legislative history trumps the fact that you've got a clean contract under contract law that seems to direct a third party beneficiary, right, unless you use Kremen to say, uh-uh, this is a government contract, automatically you're an incidental. And my time has expired, but I would say, Your Honor, that as we set forth at greater length in our brief and under the Kremen case, we think that even under the contract, these plaintiffs have not shown that they're third party beneficiaries. What's your view about inviting the views of the United States? I would never suggest that the Court not invite the views of the United States. I know that the Department of Justice does an excellent job under the good supervision. Come on. Come on. It used to do that. As a practical matter, does it add to the mix to have the views of the United States? Does it delay things? I don't know whether it would delay or whether it would add to the mix. I think that the Court can decide without the views of the United States, but obviously if the Court feels that would be helpful, there's no reason not to. Well, if we go with the third party beneficiary, I imagine HHS is going to be kind of interested. Well, they obviously have an interest in it. They do enforce this contract. If they were very interested, they'd probably be here by now, wouldn't they? That may be true as well. Okay. Thank you, Your Honor. Thanks very much. Do I have a minute, Your Honor? Yes, you do. You've got a minute? How long? One second. You'll see in a minute how long. You have a minute. The recoveries that have been obtained by the United States, the record at page 75 reveals are fines. They're not recoveries for 340B entities. 340B entities have had recoveries in State court in Alabama as recently as last week in jury trials under State law. That's not in the record, though, is it? No, it's not. But we just heard some stuff about what other contracts are in the record. What were those? In your complaint, what were those type of recoveries? There were fines. If you look at page ER75, those are fines for violations. Now, the other thing is this is not a Medicaid program, Judge Brunetti. You were right from the start. But I'm saying this was created by the Public Health Act. It is true the statute created no cause of action. The statute simply created a contract, and the contract has the causes of action in it. The elective dispute resolution program and the right to sue. So this is a – this is the unique third-party intended beneficiary case. Kremen is correctly decided as an incidental beneficiary case. This is the quintessential case where the intended third-party beneficiary is direct, just as the German case says. It must at least show that it was intended for his direct benefit. Well, that's what this contract does at page 91. It's the classic. All of the other – here's the incidental beneficiary in our case, the patients. If millions of patients were bringing this suit, they would be the irrigators in Klamath, the farmers in Orff. Sure, the farmers were mentioned in Orff as incidental beneficiaries. Here we have direct beneficiaries. That's the difference. It's a difference between the patients, indirect, and the 340B entities, direct. Thank you, Your Honor. Thank you, counsel. Thank you both very much for a very good argument, a nice way to close the day. Good to have you both in court. Mr. Lutz, welcome. Thank you very much. I appreciate it. Welcome to the Ninth Circuit. Thank you. Thank you.
judges: Reinhardt, Brunetti, Fisher